No. 01-145

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 289

DOME MOUNTAIN RANCH, LLC,

Plaintiff and Appellant,

v.

PARK COUNTY, a Political Subdivision of the

State of Montana, acting by and through its County

Commissioners, JIM HUNT, TERRY SARRAZIN

and DAN GUTEBIER,

Defendants and Respondents.

APPEAL FROM: District Court of the Sixth Judicial District,

In and for the County of Park,

The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John C. Brown, Cok, Wheat, Brown & McGarry, PLLP, Bozeman, Montana

For Respondent:

Tara DePuy, Park County Attorney, Livingston, Montana

Submitted on Briefs: August 2, 2001
Decided: December 20, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Dome Mountain Ranch, LLC ("Dome Mountain"), appeals from the Findings of Fact, Conclusions of Law and Judgment of the Montana Sixth Judicial District Court, Park County, determining that a road located on Dome Mountain's property is a county road established through prescriptive use.

¶2 We reverse and remand for proceedings consistent with this Opinion.

¶3 The following issue is presented on appeal: Whether the District Court erred in determining that a public prescriptive easement exists along the subject road located on property owned by Dome Mountain?

## BACKGROUND

¶4 In 1997, Dome Mountain purchased certain real property located in Sections 3, 4 and 10, Township 7 South, Range 7 East, M.P.M., Park County, Montana. The disputed road, located on Dome Mountain's property, is 1.82 miles in length and extends from the East River Road through Section 3, Township 7 South, Range 7 East, P.M.M., Park County, Montana, through Section 10 to the Dailey Lake - Carbella Road located in Section 2, Township 7 South, Range 7 East, P.M.M., Park County, Montana. The Dailey Lake - Carbella Road, which crosses Dome Mountain's property in Section 10, is a county road established by petition in 1918.

¶5 The parties to this dispute presented extensive historical evidence to the District Court regarding use of the road. Although it is not necessary to summarize all of the testimony presented, we shall attempt to identify the evidence we deem relevant to our decision.

¶6 Prior to 1965, the subject road actually connected to the East River Road in Section 4. However, the stretch located in Section 4 was vacated in 1965 after part of the road was destroyed by a dam washout. After the washout, Thelma Gray ("Gray"), Dome Mountain's predecessor in interest, reconstructed this section to its present location where it now connects to the East River Road in Section 3. When the road was relocated to Section 3, employees of Gray placed gates, often locked, at the intersection where the subject road connects to the East River Road. No trespassing signs were also placed on the subject road when it was relocated. After the gates and signs were placed on the relocated road, individuals would occasionally use the road if the gates were unlocked, primarily for recreational purposes.

¶7 Various governmental maps dating from 1909 depict a road passing through Dome Mountain's property in varying locations without indicating whether the road is public or private. The official Park County Road Map designates the subject road, including the vacated portion located in Section 4, as County Road No. 17. However, Park County has no written records indicating the Park County Commissioners ever formally declared the road to be " County Road No. 17" until 1994. The date the road was designated as County Road No. 17 on the official Park County Road Map is unclear.

¶8 Prior to Dome Mountain's purchase of the real property, the Public Lands Access Association and members of the public petitioned the Park County Commission on September 28, 1993, to establish the subject road as a county road and to open it as such. A public hearing was held on December 14, 1993, after notice of the hearing was published in the *Livingston Enterprise*. On February 11, 1994, Gray and members of the public petitioned the Park County Commission to abandon the subject road as a county road. A public hearing was held on April 6, 1994. Thereafter, the Park County Commission responded to both petitions and declared that the subject road was a county road and officially labeled it as County Road No. 17, but stated that Park County did not have sufficient funds to improve the subject road.

¶9 When Dome Mountain purchased the real property, it rebuilt and substantially improved the road. During the reconstruction, Park County required that Dome Mountain obtain a Park County Road Approach Permit where the subject road connects with the East River Road in Section 3. The Park County Road Approach Permit, dated November 14, 1997, designated the subject road as a "residential drive" and required that Dome Mountain maintain the approach.

¶10 On April 28, 1998, Park County sent written notice to Dome Mountain that a prior petition to abandon the subject road as a county road had been denied by the Park County Commission, and that the subject road had been established as a county road by prescriptive use. In the notice, Park County notified Dome Mountain that a locked gate located on the road at the intersection of the East River Road must be removed. Dome Mountain refused to remove the locked gate after receiving the notice. On September 24, 1998, Park County sent a second notice to Dome Mountain stating that if the locked gate was not removed, Dome Mountain would be liable for a penalty of ten dollars per day for each day that the gate remained in place, effective September 23, 1998.

¶11 Ultimately, Dome Mountain filed a declaratory judgment action requesting that the District Court determine the parties' rights regarding ownership and use of the subject road. After a bench trial the District Court issued its Findings of Fact and Conclusions of Law on January 3, 2001, incorporating the parties' agreed facts contained in the July 28, 2000, Pre-Trial Order. The District Court concluded that Park County proved by clear and convincing evidence that the public's use of the subject road was "open and notorious", "continuous and uninterrupted", and adverse to the interests of the predecessors in ownership of Dome Mountain from at least the early 1900s to the mid-1960s. In addition, the District Court concluded that by the time a gate was locked on the subject road, the public had long established its right to use the road as a public road through prescriptive use. Further, the District Court concluded that there was no showing that Park County had any intent to abandon the road as a county road. On January 9, 2001, the District Court issued its Judgment decreeing the road to be a county road established through prescriptive use. Dome Mountain appeals.

## STANDARD OF REVIEW

¶12 We review a district court's findings of fact to determine whether they are clearly erroneous. *McCauley v. Thompson-Nistler*, 2000 MT 215, ¶18, 301 Mont. 81, ¶18, 10 P.3d 794, ¶18 (citations omitted). In determining whether the findings are clearly erroneous, we conduct a three-part inquiry: First, we review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the district court has misapprehended the effect of the evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, we may still determine that "a finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." *McCauley*, ¶18 (quoting

*Interstate Production Credit Assoc. of Great Falls v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *McCauley*, ¶18 (citation omitted).

## DISCUSSION

¶13 Whether the District Court erred in determining that a public prescriptive easement exists along the subject road located on property owned by Dome Mountain?

¶14 Dome Mountain first contends that a public prescriptive easement has never existed on the subject road. It argues that Park County failed to prove by clear and convincing evidence the elements necessary to establish a public prescriptive easement. Specifically, Dome Mountain claims Park County failed to establish by clear and convincing evidence that the use of the subject road was adverse since most of the people using the road did so with the owner's permission, either express or implied, and those who did not obtain permission were considered trespassers. Likewise, Dome Mountain maintains use of the subject road was not continuous and uninterrupted because the road was often impassable because of irrigation and snow. Similarly, Dome Mountain asserts Park County failed to prove the public substantially used the road since the only use proven at trial was occasional and recreational use. Moreover, Dome Mountain asserts that if an easement did exist prior to the mid-1960s, it was extinguished by reverse adverse possession. When the location of the road changed in 1965, the property owner installed locked gates and posted no trespassing signs. The gates, which remained locked most of the time, and the no trespassing signs, existed from the mid-1960s until 1998.

¶15 Further, Dome Mountain asserts that Park County is equitably estopped from claiming a public prescriptive easement since it required Dome Mountain to obtain the Approach Permit, wherein the subject road was described as a residential drive and required that Dome Mountain maintain the road.

¶16 Park County contends the District Court correctly determined that a public prescriptive easement was created on the subject road from at least the early 1900s to the mid-1960s. Park County maintains it established by clear and convincing evidence each element necessary to establish the existence of such easement. In addition, Park County argues reverse adverse possession did not occur when locked gates were placed on the subject road since the public still used the road when the gates were not locked and complained to Park County when the gates were locked. Also, Park County asserts there

was no intent on its part to abandon the subject road once gates were placed thereon, as is required to establish adverse possession on a county road pursuant to the Court's holding in *McCauley v. Thompson-Nistler*, 2000 MT 215, 301 Mont. 81, 10 P.3d 794.

¶17 Further, Park County contends the determination of whether a road is private or public, is a legal representation. Thus, Park County asserts equitable estoppel is not applicable to the case at hand, as equitable estoppel is premised on a misrepresentation of fact and is inapplicable in cases involving a misrepresentation of law pursuant to the Court's decision in *Elk Park Ranch, Inc. v. Park County* (1997), 282 Mont. 154, 166, 935 P.2d 1131, 1138.

¶18 After examining the record we conclude it is not necessary for us to address whether the District Court erred in determining that a public prescriptive easement was created on the subject road from the 1900s to the mid-1960s. We are persuaded that even if a public prescriptive easement was created, it was extinguished by the doctrine of reverse adverse possession.

¶19 We have held that a public prescriptive easement on a private road may be extinguished by reverse adverse possession. *Public Lands Access Assoc., Inc. v. Boone and Crockett Club Foundation, Inc.* (1993), 259 Mont. 279, 290-291, 856 P.2d 525, 532. Section 70-17-111(3), MCA, provides that a servitude is extinguished "by the performance of any act upon either tenement by the owner of the servitude or with his assent which is incompatible with its nature or exercise." Thus, we have held, in accordance with § 70-17-111(3), MCA, that "if a prescriptive easement exists, subsequent acts inconsistent with the claim by prescription, support the conclusion that the prescriptive easement has been extinguished." *Public Lands Access*, 259 Mont. at 290, 856 P.2d at 532 (citations omitted). Hence, we held in *McCauley* that a public prescriptive easement located on a road was lost by reverse adverse possession when the landowners changed the route of the road to serve their purposes and then placed gates and no trespassing signs on the relocated road. *McCauley*, ¶¶ 39-40.

¶20 We have held, however, that title to public roads, distinguished from a right of use created by public prescriptive easements, may not be obtained by adverse possession. *McCauley*, ¶ 33 (citing *City of Billings v. Pierce Packing Co.* (1945), 117 Mont. 255, 263, 161 P.2d 636, 639. There must be a clear showing of intent to abandon a county road. *McCauley*, ¶ 33. "Mere nonuse, even for extended periods of time, is generally insufficient, by itself, to indicate an intent to abandon." *McCauley*, ¶ 30 (citations

omitted). Likewise, "[m]ere nonuse or lack of maintenance by the county is not sufficient to indicate a clear intent to abandon a county road without preceding such by notice and a public hearing." *McCauley*, ¶ 31.

¶21 The road at issue here, however, was not established as a public road until 1994. Dome Mountain claims that the five year statutory period of reverse adverse possession concluded in 1970. Therefore, Dome Mountain contends it is not required to show a clear intent by Park County to abandon the subject road in proving its claim of reverse adverse possession. *See McCauley*, ¶ 33. We agree.

¶22 We note that the District Court made no express findings regarding whether Park County proved by clear and convincing evidence each element of a public prescriptive easement on the relocated subject road after 1965. The District Court determined that the relocation of the subject road was due "to the action of a landowner and did not affect the general direction or nature of the road, but changed the point where it intersected with the East River Road." Further, the District Court determined that locked gates were placed on the relocated road; however, use of the road was "continuous and uninterrupted" since the public "used the road when the gates were not locked and did not abandon its attempt to use what the public considered a public road[.]"

¶23 We have held that to be "continuous and uninterrupted," the use of a claimed right in a prescriptive easement must not be abandoned by the user or interrupted by an act of the landowner. *Hitshew v. Butte/Silver Bow County*, 1999 MT 26, ¶ 17, 293 Mont. 212, ¶ 17, 974 P.2d 650, ¶ 17 (citation omitted). Additionally, we have held that "[g]enerally, seasonal use by hunters, fishermen, hikers, campers, use by neighbors visiting neighbors, and persons cutting Christmas trees and gathering firewood are not sufficient" to establish use by the public over a definite course continuously and uninterruptedly. *McCauley*, ¶ 38 (quoting *Granite County v. Komberec* (1990), 245 Mont. 252, 258, 800 P.2d 166, 170, *overruled on other grounds by Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 879 P.2d 715).

¶24 We thus conclude that the District Court erred in applying the facts to the law regarding Dome Mountain's reverse adverse possession claim. The record provides substantial evidence that gates remaining locked a majority of the time and no trespassing signs were posted on the road from 1965 until 1998. In addition, the record shows that the public did not use the road when gates were locked. For example, as Park County correctly points out, Robert Olson testified that he attempted to use the subject road in the

1970s but found a locked gate at the East River Road intersection. Similarly, the record substantially establishes that, although members of the public occasionally used the road in its new location after gates and no trespassing signs were erected, such use was for recreational purposes. For example, Park County's witnesses Homer Berrum and Carlo Cieri testified that their use of the subject road after 1965 was for fishing and hunting purposes.

¶25 Further, the public did not request that the road be opened as a public road until September 28, 1993. Similarly, Park County did not officially declare the subject road as a county road until 1994, a period of approximately 30 years after the road was relocated and gates and no trespassing signs were in place. Thus, we conclude that the District Court erred in determining that the public's use of the subject road after 1965 was over a definite course for a continuous and uninterrupted period. Accordingly, we conclude that the relocation of the subject road in 1965 coupled with Park County and the public's acquiescence of locked gates being place thereon for approximately 30 years extinguished Park County's public prescriptive easement, if one existed, on the subject road.

¶26 Since we have concluded that the District Court incorrectly determined Dome Mountain's claim of reverse adverse possession, we need not address Dome Mountain's equitable estoppel argument.

¶27 Reversed and remanded for proceedings consistent with this Opinion.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM RICE

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART