No. 02-687

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 319

THOMAS GALASSI, LESLIE GALASSI, P.C. LELLO
GALASSI, NATHAN GALASSI, MICHAEL C. GALASSI,
LANCE E. GALASSI, RHONDA F. GIARDINA, and
KAREN THORNBERRY,

        Plaintiffs and Appellants,

    v.

LINCOLN COUNTY BOARD OF COMMISSIONERS, and
WHISPERING PINES RECREATIONAL LANDOWNERS'
ASSOCIATION, INC.,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                      In and for the County of Lincoln, Cause No. DV-01-55,
                      The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Peter W. LaPanne, LaPanne Law Firm, Missoula, Montana

        For Respondent Lincoln County:

                Bernard G. Cassidy, Lincoln County Attorney, Libby, Montana

        For Respondent Whispering Pines Recreational Landowners Association, Inc.:

                Amy N. Guth, Attorney at Law, Libby, Montana

                      Submitted on Briefs:  May 1, 2003
                                    Decided:  November 24, 2003

Filed:

_____
                             Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Thomas Galassi and others (collectively Galassis) appeal from Findings of Fact, Conclusions of Law and Judgment entered by the Nineteenth Judicial District Court, Lincoln County, finding for the Lincoln County Board of Commissioners and Whispering Pines Recreational Landowners' Association, Inc., in a quiet title action. We affirm.

BACKGROUND

¶2 The Galassis are descendants of Carlo and Winifred Galassi, who, along with Ron Thornberry, in 1964 purchased a 40-acre parcel of real property in north Lincoln County near Fortine. Thomas Galassi acquired an interest in the property from his father, Carlo, and subsequently moved his family there in 1995. The 40-acre parcel was never developed prior to Thomas' occupation. The Galassis' property is completely surrounded by the Whispering Pines Subdivision (Subdivision) which was developed in the early 1970's.

¶3 The Subdivision consists of approximately 127 five-acre parcels and includes numerous roads throughout providing access to the individual lots. Whitetail Meadow Road, the road at issue in this case, traverses the Galassi property from north to south and provides the only year round access to several lots within the Subdivision as well as United States National Forest land.

¶4 In 1996, the Lincoln County Commissioners notified the Galassis that Whitetail Meadow Road was a county road known as RP 81. On January 28, 1999, the Galassis petitioned Lincoln County to abandon Whitetail Meadow Road as a county road. When the County refused to abandon the road, the Galassis initiated this quiet title action, including

2

a claim for injunctive relief seeking to bar public access to that part of the road that crosses their property.

¶5 On September 25, 2001, the Nineteenth Judicial District Court, Lincoln County, denied the claim for injunctive relief and on July 25, 2002, the District Court held a non-jury trial to determine whether Whitetail Meadow Road was private property or a county road. On July 29, 2002, the District Court issued it Findings of Fact, Conclusions of Law and Judgment determining that Whitetail Meadow Road was a public county road.

¶6 The District Court relied on extensive evidence in reaching its conclusion that Whitetail Meadow Road and RP 81 were one and the same; namely, the petition and associated documents filed with the Lincoln County Clerk and Recorder in 1914 and 1915; the testimony of numerous persons familiar with the history of the area and road in question; and the fact that the road, as a whole, comported with the legal description as described in RP 81.

## STANDARD OF REVIEW

¶7 The standard of review of a district court's findings of fact is whether the findings are clearly erroneous. *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 202-03, 930 P.2d 37, 41. This Court has adopted a three-part test to determine whether a finding is clearly erroneous. First, we must determine if the findings are supported by substantial evidence. If so, we then determine if the district court misapprehended the evidence. Finally, if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still determine whether "a finding is 'clearly erroneous' when . . . a review of the record leaves the court with the definite and firm conviction that

3

a mistake has been committed." *Daines v. Knight* (1995), 269 Mont. 320, 325, 888 P.2d 904, 906 (citing *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). Finally, we review a district court's conclusions of law for correctness. *Dambrowski v. Champion Intern. Corp.*, 2003 MT 233, ¶ 6, 317 Mont. 218, ¶ 6, 76 P.3d 1080, ¶ 6.

## DISCUSSION

¶8 The sole issue in this appeal is whether the District Court erred in concluding that Whitetail Meadow Road is a dedicated county road.

¶9 The Galassis make several arguments in support of their position that the District Court erred in its decision. First, they maintain that the 1914 legal description of RP 81 was vague and ill defined and thus does not depict what is now known as Whitetail Meadow Road. Additionally, they assert that Whitetail Meadow Road does not appear in the Lincoln County Tract Book, therefore, it could not conclusively be RP 81. Next, the Galassis contend that Lincoln County did not maintain Whitetail Meadow Road and the road was never upgraded to county specifications. They also maintain that landowners in Section 6 considered the road to be private. Finally, the Galassis allege that the Subdivision considered all of the roadways in Section 6 to be private and did not include the stretch of Whitetail Meadow Road that crosses their property on any of the subdivision maps.

¶10 In contrast, Lincoln County asserts that there is substantial evidence to establish that RP 81 and Whitetail Meadow Road are one and the same. As a preliminary matter, the County maintains that the correct statutory procedure was followed in the formation of RP 81, and therefore Lincoln County properly declared in 1915 that the road was public. The

4

County next points to the testimony of three witnesses: Mr. Pat Hume, Mr. Larry Curtiss and Mr. Ken McKenzie. Hume testified that his family moved to this area in 1926, and he recalled the road being used at that time to haul lumber. He pointed out that the road provided school access from 1943-1946, was the only road there for a long time and followed the same course as set forth in the description of RP 81. Similarly, Curtiss recalled using the road as early as 1929 and described the road as part of RP 81. McKenzie testified that his family had lived in the area for over seventy years and recalled Whitetail Meadow Road as long as he could remember. He was fifty-one years old at time of trial. Additionally, Kyle Karstens, a title examiner and expert for the plaintiffs, testified that the road ran generally in a southwest direction, and the legal description of RP 81 was consistent with other legal descriptions written in the early 1900's. Relying on *Reid v. Park County* (1981), 192 Mont. 231, 627 P.2d 1210, the County claims that the record taken as a whole indicates that RP 81 is a public road and that it is the road known as Whitetail Meadow Road.

¶11 The Subdivision also responded to the Galassis' claims. It disputes the plaintiffs' claims that the legal description is inadequate or ill defined, pointing out that the road petition describes the road with sufficient particularity, and it identifies the point of beginning and end, the direction of travel and refers to natural markers. In response to Galassis' assertion that there has been no public maintenance of RP 81/Whitetail Meadow Road, the Subdivision points out that the appellants presented no legal authority to support their claim that lack of maintenance results in a finding that the road is private. Additionally, the Subdivision asserts that the Galassis misstate the record when they say Whitetail

5

Meadow Road is not depicted in the County Tract Book and that Section 6 landowners consider all the roads as private. The Subdivision provides record cites to the contrary.

¶12 After a review of the record, we conclude that the District Court correctly decided this case and are convinced that the District Court properly determined that the road was proposed, viewed, constructed and dedicated in substantial compliance with the laws then in existence governing the creation of county roads. We are particularly mindful that our holding in *Reid* abandoned strict compliance to the road-creating statutes in effect in 1895. We held "that it is sufficient if the record taken as a whole, shows that a public road was created. Otherwise, the burden on the public in a particular case to prove a public road was created so many years ago may well be unsurmountable." *Reid*, 192 Mont. at 236, 627 P.2d at 1213.

¶13 In *Reid*, we reviewed the road-creating statutes in existence at the time the Lincoln County Commissioners approved RP 81. *See Reid*, 192 Mont. at 234-35, 627 P.2d at 1212-13. We said that the statutes required submission of a petition by landowners, appointment of road viewers, and an order opening the road for travel by the public. *Reid*, 192 Mont. at 235, 627 P.2d at 1213. These requirements have been substantially met. For instance, here the legal description articulates a definite start point and an end point, prescribes a direction of travel as it meanders through Section 32 and 6 toward Section 7, and identifies a creek, Meadow Creek, to which the roadway runs adjacent. The 1915 minutes clearly indicate that the Commissioners declared RP 81 a public highway.

¶14 Furthermore, both the Galassis' expert, Kyle Karstens, and Bill Bischoff, Executive Assistant for the Board of Lincoln County Commissioners, testified that RP 81's legal

6

description is consistent with other legal descriptions of that era. Bischoff also testified to the process by which a road became a public roadway in 1915, stating that the process by which RP 81 became a public road conformed to the statutory requirements at that time.

¶15 Regarding Galassis' contention that Lincoln County never maintained the road as a public county road, and therefore, it was not a public roadway, we agree with the respondents. The appellants have offered no legal authority suggesting failure to maintain a public county road means a road is not public. Furthermore, once a road is established as a public roadway, as it has been here, a county must take affirmative steps to indicate intention to abandon such road. *McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 31, 301 Mont. 81, ¶ 31, 10 P.3d 794, ¶ 31. There is no record of abandonment.

¶16 Galassis attempt to present evidence that the road is private, such as the property owners within Section 6 thinking the roads were private; the Subdivision developers assuming the roads were private; the County allowing gates to remain across roadways; and posting of private property and private road signs along the roadway in question. Both respondents identify evidence in the record to the contrary. We said in *Jefferson v. McCauley Ranches*, 1999 MT 333, ¶ 31, 297 Mont. 392, ¶ 31, 994 P.2d 11, ¶ 31, even if there is contradictory evidence, we will uphold the district court if there is substantial credible evidence to support its findings. We conclude that there was substantial evidence presented to the District Court to support its finding that RP 81 is a public roadway.

¶17 There remains the Galassis' contention that RP 81 is not the same road as the Whitetail Meadow Road. The Subdivision and the County presented persuasive evidence from witnesses who testified that they were familiar with the area all their lives and at one

7

time or another lived on this road. Pat Hume testified that the road in question, now known as Whitetail Meadow Road, existed in 1926 when his family moved to the area. The road ran along Meadow Creek to the Fergusons' Place, and he frequently walked down it as a boy towards the Day Homestead to access the creek to fish. RP 81's legal description states that the road "run[s] in a westerly direction up the Meadow Creek . . . to the NE 1/4 of the N/E sec. 6 . . . then southwest to sec. 7 to P.C. Ferguson's Place." While he could not pinpoint the exact location of the Fergusons' Place, he indicated that he knew it was generally along the road that he walked numerous times to fish as a boy. Larry Curtiss testified that in 1946, he bought property just north of the Day Homestead at the end of Whitetail Meadow Road. He first recounts traveling along this road between 1929 and 1931 to cut cedar for shakes.

¶18     Bill Bischoff testified that roads were built close to a creek bottom at the turn of the century (early 1900's) and homes or residences were built near water, usually creeks. He further testified that this information, coupled with other factors contributed to the County's determination that RP 81 was Whitetail Meadow Road. Ken McKenzie, a fifty-one year old whose family has owned property on this road for almost seventy years, testified that Whitetail Meadow Road has been in existence for as long as he can remember.

¶19     In applying *Reid* to the facts in this case, we conclude that the record as a whole shows that RP 81, in fact, is a public road. Moreover, we hold the testimony offered by all the parties supports the conclusion of the District Court that RP 81 and Whitetail Meadow Road are one and the same. For the forgoing reasons, we affirm the judgment of the District Court.

8

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE