WARREN MERCER OATES, Plaintiff and Respondent, v.
ROGERICK KNUTSON et al., Defendants and Appellants.

No. 14159.
Submitted on Briefs Oct. 3, 1978.
Decided June 5, 1979.
595 P.2d 1181.

David W. Depuy, Livingston, for defendants and appellants.

Huppert & Swindlehurst, Livingston, for plaintiff and respondent.

MR. JUSTICE SHEA delivered the opinion of the Court.

Defendants, Park County and its Board of County Commissioners, appeal from judgment of the Park County District Court in a quiet title action. The judgment decreed that a public road had not been established over plaintiff's property either by statutory procedure or by prescription.

Plaintiff Oates brought this quiet title action to clarify the status of an unimproved road which passes over his property in Six Mile Gulch, on Six Mile Creek, Park County, Montana. The road is approximately three to four miles long. It begins on plaintiffs property, travels in a southeasterly direction up Six Mile Creek, traversing a narrow canyon, and terminates roughly at the end of plaintiff's property.

The road was originally built in 1908 by plaintiff's predecessors in interest, the McGuires. Although the McGuires maintained the road in the past, it has fallen into a state of disrepair and is considered by some to be too dangerous for travel. At the entrance of the road stands a metal gate which was erected in 1973 and which, on occasion, has been locked. Further along, there are at least two wire gates which have been standing for a long time. Even so, the road has been used by hunters, fishermen and campers, primarily when the weather permitted.

The dispute began in 1975 when an employee of the U.S. Forest Service, commissioned to research the county records, classified Six Mile Road as a public road. Shortly thereafter, the lock on the metal gate was shot off, and in 1976, members of a local sportsmen's club, with authorization from the County Commissioners,

drove a bulldozer over the road for repair work. Plaintiff then brought this quiet title action to clarify the status of the road naming the County and members of the Board of County Commissioners as defendants.

The action was tried on July 27, 1977, without a jury. The County alleged that Six Mile Road was established as a public road in 1888 by substantial compliance with the statute then governing the establishment of county roads. The County also contended that the public had acquired a prescriptive easement over Six Mile Road.

At the outset of trial, county records of the statutory procedures conducted in 1888 were admitted by stipulation. The documents included copies of the original petition for a road which would "loop" around Emigrant Gulch and Six Mile Gulch. The proposed route was to begin at the old town of Chico, travel south along Emigrant Creek about ten miles, then west across the mountains to Six Mile Gulch, then north along Six Mile Creek, and ultimately back to Chico. Also admitted into evidence was a copy of the report of the "viewers" (those persons appointed to view and mark out the road) which read:

"It raining all day we, after starting out, returned to Chico and proceeded from there the next day, May 22, 1888, up Emigrant as far as the east fork of said Emigrant but on account of snow on the ground, found it impracticable to lay out a road further up Emigrant than the Great Eastern about four miles south of Chico, and we do recommend that the road as laid out by us and marked on the annexed map be accepted, as a county road . . ."

"On the following day, May 23rd 1888, we started from Chico up Six Mile. as far as the McGuire camp about twelve miles *and found it equally impracticable on account of snow on the ground to view out a road and we recommend to postpone the laying out of this part of the prayed for road* to the same date, viz. the 18th of August, 1888 . . . ." (Emphasis added.)

Finally, a copy of the County Commissioners' journal entry of June 5, 1888 stated:

"Report of Viewers on Road Petitioned for by W.D. Cameron, et

al, in *Emigrant Gulch*, was read and it was ordered that *the road described in the report* be and the same is hereby opened for travel." (Emphasis added.)

As to use of the road, testimony was heard from a variety of sources. Blakeslee, one of the County Commissioners who has lived adjacent to the road since the 1920's, testified that until the present controversy started, he did not know the road was a county road and that he had not observed "a great deal" of traffic on the road. Nelson, another adjacent landowner for about 50 years, testified that use was generally on horseback and that the road led "to nowhere". Counts, a local resident familiar with the road for the past 60 years, had not seen much activity on the road except for a few hunters. Several other witnesses stated that the road was used either by themselves or others for travel to remote hunting, fishing or camping areas. This traffic was concededly seasonal in nature and, in several cases, with the permission of the landowner.

There was also substantial testimony on maintenance of the road. Blakeslee knew of only one time that the County had worked on the road—when it was graded to aid in transport of emergency equipment to where a plane crashed. McGuire, plaintiff's predecessor in interest, testified that the County told him the road was private and therefore refused to do work on the road or to remove an abandoned vehicle from it. Receipts of payment for this bulldozing and hauling work were admitted into evidence. Other witnesses believed that the road is probably unsafe and often impassable.

The District Court determined that the statutory procedure for establishing Six Mile Road as a public road was not followed, and; further, that no public road was established by prescription. The County appeals and presents two issues for our consideration:

(1) Whether the District Court erred in finding that applicable statutory procedures were not followed in establishing Six Mile Road as a public road.

(2) Whther the District Court erred in finding that Six Mile Road is not a public road by prescription.

The County contends there was substantial compliance with the

applicable statutory procedures for establishing a county road on Six Mile Road.

The statute, section 1809-1818, Compiled Statutes of Montana (5th Division—General Laws, 1887), prescribed the requirements for laying out and opening county roads for public use. In essence, there were three steps. First, local residents petitioned the Board of County Commissioners for the proposed road. Section 1809. Second, three "viewers" were appointed to "view and mark out" the road and report back to the Board with written recommendations. Section 1810-1815. Third, the Board either accepted or rejected the recommendation and, if accepted, ordered the road open for public travel. Sections 1816-1818.

The county records indicate that a petition for a "loop" road was filed, and that viewers marked out at least part of the Emigrant Gulch portion of the loop. However, the viewers report specifically postponed marking out and recommending a county road in Six Mile Gulch due to inclement weather. When the Board of County Commissioners ruled on the petition, it ordered opening of the road "in Emigrant Gulch" as "described in the report". It appears the Board only approved opening a county road in Emigrant Gulch.

The County argues that we must "assume" the Six Mile Gulch road was viewed and marked out at a later date under the statutory presumption that official duties have been regularly performed. Section 93-1301-7(15), R.C.M.1947, now section 26-1-602(15) MCA. The viewers' recommendation can hardly be viewed as giving rise to an official duty. Moreover, even if the disputable presumption embodied in section 93-1301-7(15) was applicable, the absence of any record of such further proceedings as were recommended clearly rebuts the presumption.

In construing the 1887 statute on establishing county roads, this Court stated:

"While it may be true that, in such proceedings, technical strictness in complying with the statutes is not always required, yet we think a substantial compliance with the law is and should be required before private property is condemned for public use." *Pagel v. Fergus Co. Commr's.* (1896), 17 Mont. 586, 589, 44 P. 86, 87.

The Court held that uncertainty concerning the precise location and terminus of the road ordered opened by the County Commissioners rendered the proceedings void. See also, *State v. Auchard* (1898), 22 Mont. 14, 15, 55 P. 361, 362; 39 Am.Jur.2d *Highways, Streets and Bridges* § 34. Here, the required statutory procedure simply was not undertaken with respect to Six Mile Road. The viewers expressly did not view and mark out Six Mile Road, and the County Commissioners only accepted the road they recommended for opening, namely, a road in Emigrant Gulch.

■ The County next contends that the evidence was insufficient to support the court's finding that no public prescriptive easement was acquired over Six Mile Road. This Court's standard of review is to determine if substantial evidence supported the findings of the District Court. *Hayden v. Snowden* (1978), 176 Mont. 169, 576 P.2d 1115, 1117. The evidence was that Six Mile Road was built and largely maintained by plaintiff's predecessor in interest, the McGuires. The road apparently provided limited access up Six Mile Creek and to remote parts of the National Forest. Public use was generally seasonal and enjoyed by hunters, fishermen and campers, either on foot, horseback or, (if possible), by four-wheel drive vehicles. Such recreational use is insufficient to raise the presumption of adverse use. *Harland v. Anderson* (1976), 169 Mont. 447, 451-52, 548 P.2d 613, 615. As stated in *Ewan v. Stenberg* (1975), 168 Mont. 63, 68, 541 P.2d 60, 63: "Occasional use by hunters, by sightseeing friends and by neighbors visiting neighbors falls short of the extent and type of usage necessary to result in the accrual of a public right." See also, *Taylor v. Petranek* (1977), 173 Mont. 433, 568, P.2d 120, 123.

■ The County argues that the fact of county records to the effect that Six Mile Road was a county road was sufficient to initiate acquisition of a prescriptive right. Prescriptive easements are acquired by adverse use, not by keeping records. If claimant's use was not of the requisite character, a prescriptive easement was not acquired.

The judgment of the District Court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HAR-RISON and SHEEHY concur.