DA 06-0815

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 70

ROE FAMILY, L.L.C.,

        Plaintiff and Appellee.

    v.

LINCOLN COUNTY BOARD OF COMMISSIONERS,
SCOTT BYE, APRIL BYE, JOHN AUSTIN SARFF,
LESTER BUHLER, JONI BUHLER, GARY W.
MASON, SANDRA MASON, and DOES I THROUGH V,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 2005-129
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Amy N. Guth, Attorney at Law, Libby, Montana

        For Appellee:

            Debra D. Parker, Attorney at Law, Missoula, Montana

Submitted on Briefs:  October 31, 2007

Decided:  February 26, 2008

Filed:

_____
                Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 On November 21, 2006, the District Court of the Nineteenth Judicial District, Lincoln County, granted a declaratory judgment to Plaintiff Roe Family, LLC (Roe Family). The declaratory judgment established a county road between a piece of property owned by the Roe Family and an existing county road known as Black Lake Road. The road established by the declaratory judgment traverses the property of appellant John Austin Sarff (Sarff). Of the named defendants to this action, Sarff alone appeals the District Court's decision. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The Roe Family and Sarff own neighboring properties in north Lincoln County. The Roe Property was purchased by Willard Roe in 1961, and later transferred to the Roe Family. The Sarff Property was purchased by Sarff in 1991. Scott and April Bye, and Sandra and Gary Mason own interests in adjacent properties which were formerly part of a larger property known as the Madden Ranch. The Madden Ranch borders the Roe Property to the east. The southeast corner of the Roe Property touches the southwest corner of the Madden Ranch. The Sarff Property is directly south of both of these properties, and shares a portion of its northern border with each.

¶3 In the early 20th century, Lincoln County was a part of Flathead County. In 1906, the Flathead County Commissioners established a road (1906 Road) which was approximately two and a half miles long, and traversed what is now the Roe Property from the north, ending at the southeast corner of the Roe Property. The exact location of

2

the entire route of the 1906 Road is not known with precision today and discrepancies exist among the descriptions of the route as contained in the Road Petition, the Notice of Road Opening, and various maps for the area. However, the instruments creating the 1906 Road do establish three undisputed facts: (1) the 1906 Road was approximately two and a half miles long, starting north of the Roe Property and running in southeasterly direction to the southeast corner of the Roe Property; (2) the 1906 Road connected with an established public highway located near the Madden Ranch; and (3) the 1906 Road was intended to provide access to a new school house.

¶4 The Black Lake Road is a county road in the vicinity of these three properties and was established by Flathead County in 1902. Around 1906, a school house was constructed on Black Lake Road. As currently located, this road enters the Sarff Property from the west, eventually turning north until it reaches the border of the Sarff Property and Madden Ranch. From that point, it heads due east along the southern border of the Madden Ranch.

¶5 The only current access to the Roe Property is via a short road that splits off from Black Lake Road at a point approximately 330 feet from the southeast corner of the Roe Property, heading due west until it reaches that property. This 330 foot section of road (Roe Road) lies entirely on the Sarff Property. For many years, owners of the Roe Property have used the Roe Road to reach their property. In 2002, Sarff blocked the use of the Roe Road.

¶6 On September 7, 2005, the Roe Family filed suit against Sarff and the other named defendants, seeking a declaratory judgment that the Roe Road was a part of the 1906

Road formerly established by the county, and a writ of mandamus directing the Lincoln County Board of Commissioners to take such steps as necessary to keep the road open. A bench trial was held on November 14, 2006. The District Court heard expert testimony from a licensed land surveyor hired by the Roe Family named Dawn Marquardt, the executive assistant to the Lincoln County Commissioners, as well as local residents with knowledge of the area and surrounding roads. At trial, both the Roe Family and Sarff were allowed to admit into evidence exhibits which had not been exchanged prior to trial. One of these exhibits was a map prepared by Ms. Marquardt which described the location of the various roads in that area, and was relied upon to support her opinion that the Roe Road should be declared an established county road.

¶7     The District Court ultimately denied the writ of mandamus, but granted the Roe Family's claim for declaratory relief. The District Court declared that the Roe Road was a part of the 1906 Road, and thus an established county road. It is from the District Court's decision that Sarff timely appeals.

## ISSUES

¶8     We state the issues on appeal as follows:

¶9     **Issue One:** *Did the District Court abuse its discretion by allowing the Roe Family to admit exhibits which were not exchanged prior to trial?*

¶10     **Issue Two:** *Did the District Court err in declaring that the Roe Road was an established county road?*

## STANDARD OF REVIEW

4

¶11 "Admissibility of evidence is within the sound discretion of the trial court and we will reverse the trial court only if it abused its discretion." *Miranti v. Orms*, 253 Mont. 231, 235, 833 P.2d 164, 166 (1992). "An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *State v. McCaslin*, 2004 MT 212, ¶ 15, 322 Mont. 350, ¶ 15, 96 P.3d 722, ¶ 15.

¶12 "We review a district court's findings of fact to ascertain whether they are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct." *Gelderloos v. Duke*, 2004 MT 94, ¶ 22, 321 Mont. 1, ¶ 22, 88 P.3d 814, ¶ 22 (citations omitted).

## DISCUSSION

¶13 **Issue One:** *Did the District Court abuse its discretion by allowing the Roe Family to admit exhibits which were not exchanged prior to trial?*

¶14 During testimony from Ms. Marquardt, the Roe Family offered four exhibits which had not been exchanged among the parties before trial. These included a map prepared by Ms. Marquadt to aid in her testimony, two publicly available tract maps of the area, and a deed to the school house which had been built on Black Lake Road. At trial, Sarff objected to the admission of these exhibits because a minute entry dated October 17, 2006, ordered that all exhibits to be used at trial be exchanged by Friday, October 20. The District Court noted the objection and expressed frustration that some of

5

these exhibits had not been previously exchanged, but admitted them nonetheless. Later on in the trial, Sarff also introduced an exhibit which had not been previously exchanged. This exhibit was admitted as well.

¶15 Sarff now argues that the District Court abused its discretion in allowing the Roe Family to admit these exhibits into evidence. To prevail on his argument, Sarff must show that in admitting the exhibits the District Court "act[ed] arbitrarily without conscientious judgment or exceed[ed] the bounds of reason." *McCaslin*, ¶ 15. Sarff has failed to meet this burden.

¶16 Sarff argues the District Court erred in failing to deny the admission of these exhibits, forcing him to "shoot from the hip" in responding to them. In this case, however, the admission of the exhibits was not arbitrary or unreasonable. As noted by the District Court during the objections, the map prepared by Ms. Marquadt could have been done during her expert testimony, but simply would have taken more time. Moreover, the underlying maps upon which Ms. Marquadt's map was based were public records accessible to all parties. Furthermore, the two tract maps and deeds were also public records to which all parties had access prior to trial. Finally, we note that Sarff himself was allowed to admit a similar exhibit which had not been exchanged prior to trial. Under these circumstances, Sarff has failed to demonstrate that the decision to admit the exhibits tendered by the Roe Family was an abuse of discretion by the District Court.

¶17 **Issue Two:** *Did the District Court err in declaring that the Roe Road was an established county road?*

¶18 Sarff argues that the District Court erred in declaring that the Roe Road was the final portion of the 1906 Road because the record did not permit the District Court to "reasonably identify" the Roe Road from the records establishing the existence of the Black Lake Road and the 1906 Road. Sarff does not dispute that the 1906 Road connects with the Black Lake Road. However, Sarff asserts the records creating the 1906 Road demonstrate that it traveled in a southeasterly direction until it met the Black Lake Road, unlike the Roe Road which travels due east from the southeast corner of the Roe Property until it meets Black Lake Road. Sarff further notes that he himself testified there are still remnants of the 1906 Road in the northwest area of his property which continue in a southeasterly direction until joining with the Black Lake Road. Sarff asserts that these remnants represent the true course of the 1906 Road. By declaring the Roe Road—which travels due east from the southeast corner of the Roe Property, instead of southeast as the 1906 Road was described—to be a portion of the 1906 Road, Sarff argues the District Court committed reversible error.

¶19 The Roe Family urges us to affirm. The Roe Family maintains the 1906 Road connected with the Black Lake Road, these roads had never been abandoned, and that the Roe Road still follows the path of an established county road. Roe Family concedes the exact point at which the 1906 Road originally met Black Lake Road might not be known with precision today, but asserts that even if the location of the Black Lake Road has migrated, and the 1906 Road has lengthened to make the connection with it, the Roe Road still travels the path of an established, and never-abandoned, county road.

7

¶20 Our review the record leads us to conclude the District Court did not err in declaring that the Roe Road was an established county road. As we stated in *Galassi v. Lincoln Co. Bd. of Commrs.*, 2003 MT 319, 318 Mont. 288, 80 P.3d 84, " 'it is sufficient if the record, taken as a whole, shows that a public road was created. Otherwise, the burden on the public in a particular case to prove a public road was created so many years ago may well be unsurmountable.' " *Galassi*, ¶ 12 (quoting *Reid v. Park Co.*, 192 Mont. 231, 236, 627 P.2d 1210, 1213 (1981)).

¶21 Here, the record, taken as a whole, indisputably establishes that the 1906 Road connects with the Black Lake Road. While the record does not pinpoint precisely where they met, neither does it establish that the Roe Road *is not* where the 1906 Road or the Black Lake Road was originally located. In other words, there was inconclusive proof on either side of the issue.

¶22 Knowing this, the Roe Family retained an expert witness who visited the area and examined the Road Petition, the Notice of Road Opening, and a plethora of maps in the area of these roads. Her credentials and the basis for her opinion were never challenged, and Sarff presented no expert testimony of his own to contradict Ms. Marquardt. In addition to the development of her testimony by Roe Family, and her cross examination by Sarff, the District Court questioned Ms. Marquardt at length concerning her expert testimony. Based on Ms. Maquardt's testimony, the District Court concluded that the discrepancies among the various descriptions of the 1906 Road were not unusual, and returned to the fact that the descriptions all agreed that the 1906 Road connected with the Black Lake Road near the Madden Ranch. The current location of the Roe Road is

consistent with this description, even though the location of the 1906 Road heading in a northwesterly direction through the Roe Property is difficult to ascertain. While Sarff provided testimony of his own that there was another route which was the 1906 Road, it was not clearly erroneous for the District Court to base its findings on the expert testimony of Ms. Marquadt, and give less weight to Sarff's testimony.

¶23 Moreover, as noted by the District Court, the Roe Road was the only road that all witnesses said they used to reach the Roe Property. Further, the District Court observed that even if the intersection point between Black Lake Road and the 1906 Road had migrated at some point, both roads were nonetheless established county roads which had never been abandoned. Finally, the District Court observed that there was confusion about the entirety of the 1906 Road, but that there was sufficient evidence before it to conclude that the final segment of the 1906 Road connected with the Black Lake Road, and that the location of the Roe Road was an established county road consistent with this description. Sarff has not identified any evidence establishing that these findings were clearly erroneous, or that the conclusion that the "record as a whole" showed the Roe Road was an established county road was in error.

**CONCLUSION**

¶24 We conclude the District Court did not abuse its discretion in admitting the exhibits which had not been exchanged prior to trial. Further, we conclude that the District Court's findings of fact were not clearly erroneous, and that it correctly determined that the Roe Road was an established county road. Thus, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE