FILED

03/30/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0145

DA 20-0145

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 75

PUBLIC LAND/WATER ACCESS ASSOCIATION, INC.,

      Plaintiff and Appellant,

  v.

MARK L. ROBBINS and DEANNA M. ROBBINS;
ROBERT "ROBIN" E. FINK (a/k/a ROBERT "ROBIN"
ELI FINK) and KATHIE FINK; DAVID D. MURRAY;
CLEO BOYCE, MARY D. BOYCE, DAN BOYCE and
LAURA BOYCE; JOANNE OWENS PIERCE, and the
MARABETH OWENS OSTWALD REVOCABLE TRUST
DATED NOVEMBER 27, 2012;

and

THE STATE OF MONTANA; FERGUS COUNTY, MONTANA.

      Defendants and Appellees.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DV14-2012-0085K
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          J. Troy Redmon, Keeley McKay, Redmon Law Firm, PC, Bozeman,
Montana

          Paul Grigsby, Grigsby Law PLLC, Bozeman, Montana

      For Appellees Robin Fink, Kathie Fink, Mark Robbins, Deanna Robbins, Cleo
Boyce, Mary Boyce, Dan Boyce, Laura Boyce, and David Murray:

          William W. Mercer, Matthew H. Dolphay, Holland & Hart LLP, Billings,
Montana

For Appellee State of Montana:

Danna R. Jackson, Chief Legal Counsel, Ada Cordelia Montague, Special Assistant Attorney General, Montana Department of Natural Resources and Conservation, Helena, Montana

For Appellee Fergus County:

Kent M. Sipe, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  January 6, 2021

Decided:  March 30, 2021

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Public Land/Water Access Association, Inc. ("PLWA"), appeals the Tenth Judicial District Court's judgment concluding that a Fergus County road was private because PLWA had not proven the existence of a public road by petition or by prescriptive easement. PLWA argues that (1) the District Court failed to apply the correct legal standard for its review, and (2) the record establishes the District Court clearly erred in its conclusion that the road was private. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     At issue in this case are certain segments of a road or trail north of Roy, Montana, extending approximately twelve miles from the historical Murray ranch home off of Mabee Road north to Knox Ridge Road.[1] The parties and the District Court variously referred to the disputed segments of road as part of "Mabee Road," "the Trail," or "a two-track trail"; we refer to it for clarity and ease of reference as the "Disputed Road." The parties' dispute began in 2007; the Robbins Family (named Defendants) placed a "no trespass" sign with the Robbins's phone number on it across the gate at Section 35—land

---

[1] The portions of the Disputed Road at issue are identified as: § 14, Township 20N, Range 22E; § 11, Township 20N, Range 22E; § 02, Township 20N, Range 22E; § 35, Township 21N, Range 22E; § 36, Township 21N, Range 22E; § 25, Township 21N, Range 22E; § 18, Township 21N, Range 23E; and § 11, Township 21N, Range 22E. Although other segments on the Disputed Road are located within federal lands, including the Charles M. Russell National Wildlife Refuge and the Upper Missouri River Breaks National Monument, PLWA did not litigate the status of those segments in this case.

they previously leased and had recently purchased—that hunters Russel Offerdahl and Richard Hjort had used in the past to access the Fink property and nearby Bureau of Land Management land. In September 2007, Offerdahl and Hjort entered the gate without permission and proceeded down the Disputed Road. Mark Robbins confronted the hunters to tell them the Disputed Road was private and he did not give permission for its use.[2] Offerdahl and Hjort returned the next day and proceeded down the trail. After Robbins alerted Montana Department of Fish, Wildlife and Parks, a game warden confronted the hunters. Later in the week, the game warden cited Offerdahl and Hjort for criminal trespass.[3] Mark Robbins then locked the gate entering the Robbins's and Fink's property at Section 35.

¶3 In January 2008, the PLWA, a non-profit membership organization dedicated to promoting access to publicly owned lands in Montana, sought a declaration from the Fergus County Commissioners that the Disputed Road was a statutorily created public road. The Commissioners referred the matter to the County Attorney, who reviewed county records and applicable law. The County Attorney issued a legal opinion on January 12, 2010, concluding that the Disputed Road was not a statutorily created road. The County Attorney found no evidence to support PLWA's position, stating that "neither [Mabee Road] petition addresses any portion of the [Disputed Road] as it travels through

---

[2] The testimony differed as to what Robbins, Offerdahl, and Hjort said during this confrontation. Offerdahl testified Robbins angrily told them to leave because there was a "new sheriff" in town. Robbins testified he had instead merely told the hunters to stop using the Trail. Robbins said that as he turned away, Russell stated, "we've gotten a road open before, we can do it again."

[3] The county did not pursue the trespass charges, which later were dismissed with prejudice.

4

the property." The County Attorney did not address PLWA's theory of prescriptive easement but did note, based on PLWA's provided affidavits, that it was "highly unlikely" PLWA could show the Disputed Road was public by prescriptive easement.

¶4 On August 30, 2012, PLWA filed a complaint in District Court against the State of Montana, Fergus County officials, and the local ranch families that own or lease land on the Disputed Road, including Robert and Kathie Fink, Mark and Deanna Robbins, Cleo and Mary Boyce, Dan and Laura Boyce, David Murray, and others (collectively, "Landowners").[4] The complaint sought: (1) a declaration that the Disputed Road was a public road pursuant to either 43 U.S.C. § 932 (previously identified as 27 R.S. § 2477), landowner petition under §§ 7-14-2601 through -2614, MCA, or prescriptive easement; (2) a permanent injunction enjoining the Robbins Family or any other Landowners from impeding the public's access to and use of the Disputed Road; and (3) a writ of mandamus ordering the County Commissioners and County Attorney to enforce the public status of the Disputed Road to ensure public access. The District Court dismissed the petition for writ of mandamus for failure to state a claim.

¶5 The District Court held a five-day bench trial, hearing testimony from twenty-seven fact witnesses and two expert witnesses, considering over eighty exhibits, and conducting a site visit of the Disputed Road. The District Court issued Findings of Fact and Conclusions of Law ("Order") in July 2019. It concluded that the Disputed Road was private, having never been made public by landowner petition or by prescription.

---

[4] The court later dismissed the individual county officers and amended the caption to include only Fergus County as a Defendant.

5

¶6     We begin our review of the case with a brief history.

Landowners

¶7     The Landowners are a group of ranch families that have lived and worked in the area north of Roy, Montana, for generations.[5] The Fink family are original homesteaders from 1912 whose house is located just off Mabee Road and south of the beginning of the Disputed Road. Robert E. "Bob" Fink owned and operated the Fink family ranch prior to his death in August 2013. Bob had a relationship with Offerdahl and Hjort, to whom he gave permission to hunt on his land. But the parties disputed the veracity of Offerdahl's and Hjort's testimony that Bob had said the Disputed Road was public and its use not subject to his permission. Kathie Fink, Bob's widow and wife of 41 years, and Robin Fink, Bob's son, testified that Bob believed the Disputed Road was private and never stated that it was public. Kathie additionally testified that Bob's relationship with Offerdahl and Hjort changed when they hunted on his land without permission and ran over a gate; she testified that Bob then told the hunters to stay out of their property. Bob Fink's daughter, Toni Keller, however, testified that she believed the road to be public.

¶8     The District Court disregarded the alleged statements as hearsay, noting that Bob Fink died after PLWA had filed suit and neither party had deposed him. It concluded that the statement was "not inherently reliable," and "though introduced without objection by the Defendants, the [c]ourt is not persuaded by Offerdahl's testimony in light of the

---

[5] Among the landowners who own property on the Disputed Road are Joanne Owens Pierce and the Marabeth Owens Ostwald Revocable Trust. These landowners were served but did not appear and have not participated in the case.

6

conflicting substantial credible evidence that undermines the statement." The District Court further concluded that the statement would have "provide[d] Offerdahl no legal authorization to cross lands owned by [other Landowners]" because no evidence existed suggesting Bob Fink was acting as an agent for the other Landowners.

¶9     The other Landowners include the Robbins family, who have ranched in the area for several decades; they expanded their ranch in 2007, purchasing land along the Disputed Road that they had leased from the Fink family since 1998. The Boyce family has owned property in the area for three generations; it was their grandfather who granted access across another of his properties to create Knox Ridge Road. The Murray family has owned land on the Disputed Road since 1940, but the Robbinses purchased the Murrays' property after PLWA filed suit in this case. It is the Murray family's historic gate that stands at the entrance of the Disputed Road.

Mabee Road



Figure 1. Appellee Landowners' Expert's Trial Exhibit of Compiled GLO[18] Plats. Annotations added by Landowners on appeal.

¶10    Mabee Road is a statutorily created, well-maintained, gravel road that originates near Roy, Montana, and ends about thirteen miles north between Sections 14 and 15 in

Township 20 N, Range 22 E.[6]   Mabee Road provides access to a Malmstrom Intercontinental Nuclear Missile Silo and to a Roy Public School bus route.  Two petitions created and extended north Mabee Road: Petition 842 and Petition 2041.  County records document Petition 842's exacting compliance with Montana law.  Landowners in that petition sought to abandon another road[7] and to establish Mabee Road from the "SW corner sec. 34" to "the SE corner of the SW 1/4 section 14."  The Road Viewers Report provided the same defined end point, and the petition map prepared by the road viewers shows the same end point at Section 14.  The Commissioners granted this petition in 1919.  County records also document Petition 2041's exacting compliance with Montana law.  Landowners submitted this petition in 1949, seeking to extend Mabee Road south to "the south side of sections 29 and 30" and north to "the 1/4 corner between section[s] 14 and 15."  The petition maps also show Sections 14 and 15 to be the petition's end point.

¶11    Finally, landowners in the area unsuccessfully petitioned again to extend Mabee Road in 1965.  This petition sought northward expansion of Mabee Road from the "SW 1/4, Section 14," "thence east 1 mile to the Section line between Sections 14 and 13" and then "North 2 1/4 miles" to Sections 1 and 2.  The District Court noted that this petition did not mention the Disputed Road, though it would be reasonable to infer the petition would have identified it had it been considered a county road at the time, and the petition's

---

[6] Much of the record refers to the Disputed Road as Mabee Road, but because the parties disputed whether the roads were connected, we refer to them independently.

[7] Petition 842 identified the road it sought to abandon as "Old Missouri River Trail."  The parties' experts disagreed whether the Old Missouri River Trail was the same as Mabee Road or the Disputed Road.

requested extension does not follow the path of the Disputed Road. As documented in the 1968 Commission Journals, the Commissioners denied this petition because they found "insufficient use and cost too great" to justify the expansion, which would "only be used in summer and by hunters."

¶12     The parties found no other documentation showing additional extensions north of Mabee Road by petition.[8]  In 2003, however, during a comprehensive review of county records to ensure county roads were properly petitioned, the Commissioners by resolution reaffirmed Mabee Road as a county road beginning near Roy and ending between Sections 14 and 15.

¶13     The District Court concluded that the Mabee Road petitions "do not identify, reference, or otherwise have any bearing on the [Disputed Road]," and that the Disputed Road "is a separate trail, distinct from Mabee Road."

State School Trust Section

¶14     In 2014, after PLWA filed its complaint, Fergus County applied to the Montana Department of Natural Resources and Conservation ("DNRC") for a historic right-of-way over the Disputed Road where it crosses state school trust land at Section 36, Township 21N, Range 22E. Fergus County submitted this application within a bundle of dozens of applications for historic rights-of-way over State trust land sections. The DNRC granted the application. The District Court found that "[t]he circumstances around this application

---

[8] There was substantial testimony regarding documents located in the Fergus County Bell Tower that have not yet been inventoried, but there was no testimony suggesting additional petitions exist.

10

and payment are curious." It found that "[t]he application . . . did not accurately describe the primitive two-track trail that actually exists on the state school section. Instead, the disputed trail was described incorrectly as a well-maintained and graveled road." The court ultimately concluded, however, it "ha[d] no basis for concluding that the application process was fraudulent." County officials disavowed the application at trial, claiming that it was a "mistake" and generally acknowledging that the Disputed Road was not a county road.

Disputed Road

¶15 The Disputed Road begins at the gate entering the Murray Family's historic property off the northern end of Mabee Road. It meanders north for about twelve miles where it intersects with Knox Ridge Road. It is intercepted by seven gates, each located on the private property of the Landowners, and it crosses State trust land. The Disputed Road also crosses federal land, which is not at issue.



*Figure 2. State's Trial Exhibit of DNRC's Map of the Disputed Road*

¶16     There was substantial testimony regarding the Disputed Road's present condition, which has not been used in over a decade since the Landowners closed it. Having conducted a site visit during trial, the District Court found that the Disputed Road is

"readily distinguish[able]" from "Mabee Road and the Knox Ridge Road"; it described the Disputed Road as "a two-track trail through pasture land and sage brush, with grass and sage brush growing between the tracks. The disputed trail is not graveled, nor regularly maintained in any other way." It also described the Disputed Road as "primitive at best" and "impossible to navigate in a passenger car and difficult to navigate in some places with a truck[,]" instead "best negotiated in an ATV" or by "horse[] and foot travel." The District Court found that in "fall, winter and spring," the Disputed Road is "likely impassible a good bit of the time." PLWA's expert, Barney Hallin, testified that he was never able to drive the full length of the Disputed Road in the month of December, despite multiple attempts with a chained-up pickup from the south and from the north.

¶17    There was also some testimony of the historical condition of the Disputed Road prior to the Landowners' closure. PLWA points to one witness who testified to the Disputed Road being in "fair condition" during the early 1980s. Some others testified to the Disputed Road being bladed in some sections. The majority of testimony, however, indicated the Disputed Road was a two-track trail throughout its history.

¶18    PLWA presented no evidence at trial of county records or other documentation under Montana law showing that the Disputed Road had been statutorily established as a public road. It did, however, present considerable evidence consisting of historic surveys and maps from various sources allegedly showing the Disputed Road's path. PLWA placed considerable emphasis on a 1913 survey, referred to as the Bolles Survey, and its related documents, including the subsequent Fergus County road books. The Bolles Survey was a survey of some 1900 miles of then un-platted roads within Fergus County;

13

the Fergus County Commissioners contracted H.C. Tilzey to complete the project as a "planning tool"; Tilzey contracted L.C. Bolles to do the road surveying work. The parties disagreed whether the Disputed Road was one of the routes shown on the Bolles Survey and later incorporated into the road book. The parties further disputed the significance of the County's action to incorporate the Bolles Survey roads into the county road books and maps. PLWA's expert contended that by including a route on the county road book, the County necessarily was assuming jurisdiction over that route, including the Disputed Road; the Landowners' expert disagreed, noting that merely placing a route on a map does not alone indicate the County took action to make the route a county road. Additional testimony indicated that the road book often included the petition number next to a petitioned road or other references to where documents pertaining to the approval of the road are found in the public record.

¶19   The District Court found that PLWA did not prove the road indicated on the Bolles Survey was indeed the Disputed Road, but even if it had, the road showed no notation indicating it had been considered a petitioned road or a county road by some other method. The District Court found, "Fergus County took no action to make the survey a County road. There are other surveys that were part of the Tilzey contract, including Knox Ridge Road, which are not County roads."

¶20   Another map that received significant discussion at trial was the 2007-2008 Fergus County Gas Tax Map. Gas tax maps are annual maps the counties submit to the State to determine funding for county roads based on the mileage of roads capable of being driven by passenger cars and actually used by the public. Commissioner Carl Seilstad

14

testified that a road need only be "open" to appear on the Gas Tax Map and does not necessarily need to be a county road. The Disputed Road appeared on the 2007-2008 Gas Tax Map, but Commissioner Seilstad testified that it should not have been included on the map and does not qualify for funding because it is unmaintained and not passable by a two-wheel drive vehicle. Commissioner Seilstad testified that the county does not conduct in-depth assessment on each road when the Commissioners review the Gas Tax Map prior to submission.

¶21 The District Court ultimately concluded that

> the appearance of the disputed trail on various maps does not carry great weight, in terms of establishing it as a public road. According to the testimony of [Landowners' expert] Ken Jenkins, once there is a feature on a map, it keeps getting repeated on successive maps, with the addition of the new information on the new map. Moreover a road appearing on a map is not proof of use.

It also stated,

> in weighing the testimony of both expert witnesses, the [c]ourt is cognizant of the fact that lines on a map or survey are not evidence of physical use of the routes they depict. Lines representing old roads on old surveys and old maps are not substitutes for competent evidence of actual public use.

¶22 Regarding testimony of public use, the District Court concluded that the Disputed Road does not lend itself to much use and that the earliest credible evidence of continuous non-landowner use first occurred around the mid-1980s with seasonal hunters in the fall. The parties disputed whether this non-landowner use was with or without landowner permission. Most witnesses admitted to typically requesting permission, but there were a few out-of-state hunters who testified to entering the Disputed Road without permission. The District Court noted, however, that those hunters "did not want to proceed

15

beyond [the] Gate for fear that [they] would be trespassing" and instead "turned around" to go ask "permission to use the private land behind the gate." The District Court concluded that hunters typically request permission, and that "PLWA's testimony of public use consists almost entirely of use for seasonal recreational purposes, namely hunters who testified they used the disputed trail."

## STANDARDS OF REVIEW

¶23 We review a district court's conclusions of law for correctness. *Letica Land Co., LLC v. Anaconda-Deer Lodge County*, 2015 MT 323, ¶ 13, 381 Mont. 389, 362 P.3d 614 (citation omitted). We review the court's findings of fact for clear error. *Jefferson County v. McCauley Ranches, LLP*, 1999 MT 333, ¶ 6, 297 Mont. 392, 994 P.2d 11 (citation omitted). "A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed." *Roe Family, L.L.C. v. Lincoln Cty. Bd. of Comm'rs*, 2008 MT 70, ¶ 12, 342 Mont. 108, 179 P.3d 514 (citation omitted). We review evidence "in the light most favorable to the prevailing party," *Lewis & Clark County v. Schroeder*, 2014 MT 106, ¶ 12, 374 Mont. 477, 323 P.3d 207 (citation omitted), and we will not reweigh the evidence or the credibility of witnesses. *Barrus v. Mont. First Judicial Dist. Court*, 2020 MT 14, ¶ 13, 398 Mont. 353, 456 P.3d 577 (citations omitted). "Even when there is a conflict in the evidence, we will uphold the court's [decision] where there is substantial credible evidence to uphold its findings of fact and conclusions of law." *Jefferson County*, ¶ 31 (quoting *Lorenz v. Estate of Schilling*, 236 Mont. 82, 84, 768 P.2d 869, 870 (1989)); *Roe Family*, ¶ 12.

16

¶24 *1. Whether the District Court erred in concluding that the record, taken as a whole, did not establish that the Disputed Road is a statutorily created public road.*

¶25 In Montana, historically "[t]here are three ways by which a private road may become open and public, including adverse use or prescription, common law dedication by private owners, and statutory dedication by the county." *Heller v. Gremaux*, 2002 MT 199, ¶ 9, 311 Mont. 178, 53 P.3d 1259 (citing *Carbon County v. Schwend*, 212 Mont. 474, 476, 688 P.2d 1251, 1252 (1984)). The procedures for statutory dedication are set out in Title 7, Chapter 14, Part 26 of the Montana Code Annotated, requiring, in part,

> residents to submit a petition regarding the proposed road to the board of county commissioners; the posting of public notice of the petition; the board to appoint road viewers to mark out the road and report back to the board; and the board to approve or reject the road viewers' report and provide notice of the road's opening.

*Letica*, ¶ 15 (citations omitted). Although these procedures typically require strict compliance, we have acknowledged it would be "an unrealistic burden on the public to prove" with certainty that a historic road is public. *Reid v. Park County*, 192 Mont. 231, 234, 627 P.2d 1210, 1212 (1981). With such historic roads, we require instead that "the record taken as a whole show[] that a public road was created." *Reid*, 192 Mont. at 234, 627 P.2d at 1212; *Galassi v. Lincoln Cty. Bd. of Comm'rs*, 2003 MT 319, ¶ 12, 318 Mont. 288, 80 P.3d 84.

¶26 In *Letica*, ¶ 16, we described the process by which we review such claims on appeal:

> [W]e have concluded that under the "record taken as a whole" standard, there must be "substantial credible evidence" to support a district court's determination that a road is [or is not] public. . . . [T]he "record taken as a whole" standard allows for less than strict compliance with the statutory

17

requirements for establishing a public road. Consequently, the determination whether a road was created by petition requires a district court to make factual findings—that we review for clear error—and then apply the "record taken as a whole" legal standard to those findings—a conclusion of law that we review for correctness.

(Internal citations omitted.) We consider first PLWA's arguments that the District Court's findings of fact are in error. We then review for correctness its conclusion that, taking the record as a whole, the Disputed Road was not shown to be a public road.

¶27 The District Court found no evidence to suggest the Mabee Road petitions extended to the Disputed Road. It found from Petitions 842 and 2041 that the end of Mabee Road is "readily ascertainable", ending at "the spot the county stopped building the road . . . the common quarter corner on the common section line between Section 14 and 15." "In stark contrast," it noted, there were no "petitions seeking a county road over the [Disputed Road]," nor was there any evidence of a Commissioners' meeting to consider such a petition. It additionally observed that the very purpose of the failed 1965 Petition— to extend Mabee Road to the north, in the exact direction the Disputed Road traveled—and the fact that it failed to mention the Disputed Road, comprise strong evidence that the nearby citizens of Roy who submitted the petitions in 1918, 1949, and 1965 very likely did not believe the Disputed Road to be public.

¶28 The District Court also found that the evidence regarding the Bolles Survey and the subsequent Fergus County road books did not demonstrate the County had taken action to make the surveyed roads county roads. It found that the Bolles Survey did not contain a notation as to the origin of the road, and it noted that "[t]here are other surveys that were part of the Tilzey contract, including Knox Ridge Road, which are not County roads." It

18

additionally found that "[n]one of the Bolles Survey drawings intersected with the Mabee Road, that was created by the petition process." The District Court thus concluded that PLWA had not proven the Bolles Survey showed the Disputed Road or that the road depicted on the Bolles Survey was ever built, laid out, or used by the public.

¶29 Finally, the District Court relied on the fact that there was insufficient credible evidence that nearby landowners and residents were aware of a county road existing on the Disputed Road; no evidence showing a need for a county road (though there was, to the contrary, evidence of *no* need for a county road); and, finally, no credible evidence of the County ever seeking to exercise jurisdiction over the Disputed Road through actions such as plowing snow, maintaining the Disputed Road, or conducting other functions a county normally would conduct on a public road. Although the County applied for and was granted a historic right-of-way over Section 36, the District Court did not find this evidence persuasive of the County's intent or the status of the road in light of county officials' testimony that the application was a mistake and that they did not believe it to be a county road. It also rejected as not credible the testimony of Bill Berg, a former United States Fish and Wildlife Service employee, that the county and federal government worked to maintain the Disputed Road in light of other testimony that the road had not been maintained; it instead found from the evidence presented that the petitions for maintenance did not extend beyond Mabee Road. The District Court thus concluded that, "weighing the evidence before the Court, PLWA did not prove that the [Disputed Road] is a county road or part of the Mabee Road."

¶30     PLWA generally argues the District Court failed to apply the *Reid* "record as a whole" standard.[9]  It contends that the District Court held it to the higher strict compliance standard of proof as evident by, among other things, the Order's failure to mention the *Reid* standard in any of its findings of fact.  PLWA argues the District Court's reliance on "absence of evidence as proof of the same" was improper under *Reid* and its progeny.  PLWA further relies on the fact that the District Court largely adopted Landowners' proposed findings and conclusions.[10]

¶31     PLWA also cites evidence from the historical record that it contends the District Court "discounted or ignored" in considering whether the county had asserted jurisdiction over the Disputed Road, including historical surveys and maps from the early

---

[9] As part of this argument, PLWA appears to contend that the *Reid* standard shifts the burden of proof to private landowners to show that a disputed road was not established as a public road. Citing *Roe Family*, ¶¶ 21-23, it argues that "the party opposing the road's public status bears the burden of providing conclusive proof that the road is not a county road."  We disagree.  The paragraphs PLWA cites in *Roe Family* discuss the parties' introduction of evidence supporting their arguments when there is "inconclusive proof on either side of the issue," observing that the landowner in that case presented no evidence to rebut the evidence supporting the road being public.  *Roe Family*, ¶¶ 21-22.  The referenced citation pertains to the burden of an *appellant* landowner *on appeal*.  *Roe Family*, ¶ 23; *compare* § 26-1-402, MCA ("a party has the burden of persuasion as to each fact the existence or nonexistence of which is essential to the claim for relief or defense the party is asserting").  *Reid* simply allowed more flexibility to the public to prove a public road was established—it did not eliminate that burden, nor did it shift the burden of proof to the defendant landowner.  *Reid*, 192 Mont. at 234, 627 P.2d at 1212.

[10] PLWA implies that the District Court's adoption of Landowner's findings and conclusions should render its order reversible.  Although we have looked with disfavor on the practice of adopting a party's proposed findings and conclusions verbatim, it does not necessarily render such an Order reversible.  *Sawyer-Adecor Int'l, Inc. v. Anglin*, 198 Mont. 440, 447, 646 P.2d 1194, 1198 (1982).  "The District Court's findings will not be rejected if they are supported by the evidence." *Searight v. Cimino*, 230 Mont. 96, 101, 748 P.2d 948, 951 (1988).

1900s, especially the Bolles Survey[11]; maintenance petitions and road claims; Commissioners' journal entries; the right-of-way application and easement granted over the state school trust section; and tax deeds for land over which the County previously held property along the Disputed Road.[12] PLWA contends that we have previously considered broad evidence under the *Reid* standard, beyond documentation of the statutory procedures, including: easements granted by landowners; compensation paid to affected landowners for rights-of-way; county action demonstrating jurisdiction over the road, such as maintenance of the road; significant public historical use; whether the road in question

---

[11] PLWA mentions on appeal, based on its expert's testimony, that § 2600 of the 1895 Political Code ("curative statute") was in effect at the time of the Bolles Survey's creation. That statute provided:

> All highways, roads, lanes, streets, alleys, courts, places, and bridges laid out or erected by the public, or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways.

Section 32-103, R.C.M. 1947 (repealed 1959). PLWA does not develop an argument as to how the elements of the curative statute were met. *See Stevens v. Novartis Pharm. Corp.*, 2010 MT 282, ¶ 85, 358 Mont. 474, 247 P.3d 244 (citations omitted) (noting that "it is not [this Court's] obligation to conduct legal research, guess at precise positions, or develop legal analysis that may lend support to the parties' positions"). In any event, we have applied the curative statute to "cure[] procedural defects which were not jurisdictional if the county had shown obvious efforts on the record to establish a road." *Sheldon v. Flathead County*, 218 Mont. 270, 273, 707 P.2d 540, 542 (1985) (citation omitted); *Garrison v. Lincoln County*, 2003 MT 227, ¶ 15, 317 Mont. 190, 77 P.3d 163. It does not support the finding of a public road absent evidence of statutory creation or established public use, both of which the District Court found lacking.

[12] PLWA also argues the District Court abused its discretion by discounting as hearsay the testimony regarding Bob Fink's alleged statements to Offerdahl and Hjort as well as a 2000 letter Fink wrote that stated the Disputed Road provided access to private and public land "for 90 years. No attempt to close this road was ever made. Man has never closed this road." PLWA observes that Landowners made no objection to this testimony and argues it should not have been excluded from the court's consideration under the record as a whole. The District Court did not abuse its discretion in discounting this evidence in light of its hearsay nature, the conflicting testimony from Bob's wife and son, and the inconclusive statements in Bob's letter.

21

provides direct access to public lands; and maps depicting the road in question. *Sayers v. Chouteau County*, 2013 MT 45, ¶ 32, 369 Mont. 98, 297 P.3d 312; *Garrison v. Lincoln County*, 2003 MT 227, ¶ 15, 317 Mont. 190, 77 P.3d 163; *Lee v. Musselshell County*, 2004 MT 64, ¶ 15, 320 Mont. 294, 87 P.3d 423; *Powell County v. 5 Rockin' MS Angus Ranch, Inc.*, 2004 MT 337, ¶¶ 18-19, 324 Mont. 204, 102 P.3d 1210; *McCauley Ranches*, ¶ 34; *Sheldon v. Flathead County*, 218 Mont. 270, 272-73, 707 P.2d 540, 541-42 (1985).

¶32     PLWA further argues the District Court erred when it disregarded Hallin's testimony regarding the possibility of the Disputed Road being made a public way by § 2477 of the Revised Statutes of the United States, through which the public may accept the federal government's offer by establishing a public highway in a manner recognized under state law.   Citing *Wilderness Society v. Kane County*, 632 F.3d 1162, 1165 (10th Cir. 2011) (citation omitted) ("'All that is required' for title to pass 'are acts on the part of the grantee sufficient to manifest an intent to accept the congressional offer.'"), it contends that the District Court clearly erred by concluding such a public way was not established via the 1903-1905 postal route between Roy and Delos or "in 1913 when the County platted and surveyed it and placed it on the 1914 [County] Map."

¶33     PLWA has not shown error in the District Court's determination that its evidence was insufficient to overcome a record devoid of any documentation showing the statutory petition process occurred, any official commission action opening the road, any easements granted by landowners or compensation paid to landowners, or any public hearings.  The District Court found that PLWA failed to show sufficient credible public use of the

Disputed Road prior to the 1980s; it failed to show sufficient evidence of county action, such as maintenance, occurring on the Disputed Road; and it similarly failed to show sufficient evidence of county action toward a petition or dedication process sufficient under Montana law to create a road pursuant to R.S. 2477. *See Our Lady of the Rockies, Inc. v. Peterson*, 2008 MT 110, ¶ 38, 342 Mont. 393, 181 P.3d 631 (R.S. 2477 is merely an invitation to accept a public road by one of the lawful means available to create a public road). The record contains substantial credible evidence to support these findings. Based on the conflicting evidence, PLWA has not shown the District Court's findings to be in clear error.

¶34 We do not find persuasive PLWA's contention that the District Court erred by not specifically mentioning all of the maps and surveys allegedly depicting the Disputed Road. Our review of the record indicates the District Court found these maps unpersuasive. For example, the evidence showed: the route on the Bolles Survey showed no annotation, whereas other routes included information regarding their petition or related public records; many Bolles Survey routes are today open pasture or crop lands; the General Land Office plats show other historical routes to the Missouri River that may have been easier to navigate than the Disputed Road; the 1903 postal map shows only dotted, arched lines, and thus is not conclusively the Disputed Road; and the Landowers' expert, Ken Jenkins, opined the Disputed Road is not the same route identified or referenced in the early surveys, maps, and other records PLWA relied upon. In addition, the District Court observed that merely showing a route on a map is not sufficient to show it is a county road. It is certainly true that maps may assist in verifying that a road was created. *See, e.g., Lee*, ¶ 15. It is

23

likewise true, however, that merely showing a route exists on a map is insufficient proof of county action to create a public road. *See Letica*, ¶¶ 22-23 (finding unpersuasive the argument that county maps alone could be "determinative of whether a county established a road by petition"). The court's findings of fact were voluminous and covered substantial credible evidence supporting the outcome, and its failure to analyze each piece of evidence does not indicate a misapprehension of the effect of the evidence or a clear mistake. *Letica*, ¶ 27.

¶35 Finally, on review of the entire record, we are not convinced the District Court failed to apply the *Reid* standard. The court distinguished the facts in *Reid* from the facts in this case, but it stated clearly that "the standard in *Reid*, *as applied to the facts of this case*, fails to support PLWA's position." (Emphasis added.) The District Court's Order plainly reveals its careful consideration of the entire record; the existence of evidence in the historical record that supports PLWA's contention did not bind the District Court to accept that evidence over the conflicting evidence in concluding that the record did not show a public road had been established.

¶36 Upon our review of the entire record, there is no indication that the District Court failed to consider the complete historical record in making its determination. Viewing the evidence in the light most favorable to the Landowners, we conclude that substantial credible evidence supports the District Court's finding that the Disputed Road is a private road. Accordingly, we affirm the District Court's conclusion that the Disputed Road is not a statutorily created public road.

24

¶37     *2. Whether the District Court erred in concluding that the Disputed Road is not a public road by prescriptive easement.*

¶38     The public may acquire a prescriptive easement on a private road when it shows by "clear and convincing evidence" that the public's "use of the roadway was open, notorious, exclusive, adverse, continuous and uninterrupted for the complete statutory period." *Heller*, ¶¶ 12, 15 (citations omitted); *Leisz v. Avista Corp.*, 2007 MT 347, ¶ 37, 340 Mont. 294, 174 P.3d 481; *Wareing v. Schreckendgust*, 280 Mont. 196, 205-06, 930 P.2d 37, 42-43 (1996) (citation omitted) ("clear and convincing evidence" requires "a clear preponderance of proof," but not "unanswerable or conclusive evidence"; "it must be more than a mere preponderance but not beyond a reasonable doubt"). For a public prescriptive easement, the element of exclusivity requires only that users of the road are members of the public rather than an individual. *Schroeder*, ¶ 18 (citing *Heller*, ¶ 12).

> To be "open and notorious," the use of a claimed right must provide the landowner with actual knowledge of the claimed right, or be of such a character as to raise the presumption of notice. To be "continuous and uninterrupted," the use of a claimed right cannot be abandoned by the user or interrupted by an act of the landowner. To be "adverse," the use of the easement must be exercised under a claim of right and not merely as a privilege or license revocable by the landowner; the landowner must know of and acquiesce to such a claim.

*Schroeder*, ¶ 19 (internal citations omitted). Additionally, "continuous use does not mean constant use; rather, if the claimant used the property in dispute whenever he desired, without interference by the owner of the servient estate, the use was continuous and uninterrupted." *Pub. Lands Access Ass'n, Inc. v. Bd. of Cty. Comm'rs of Madison Cty.*, 2014 MT 10, ¶ 36, 373 Mont. 277, 321 P.3d 38 (internal quotations, citation omitted). The

statutory period in Montana for such an easement is five years. *Heller*, ¶ 12 (citing § 70-19-404, MCA) (also observing that, prior to 1953, the statutory period was ten years).

¶39 The District Court determined that no public prescriptive easement had been created on the Disputed Road because PLWA's presented testimony regarding seasonal recreational use is insufficient to demonstrate the public use was continuous and uninterrupted or to constitute adversity. It found "no competent evidence" of continuous public use of the Disputed Road in either 1903 or in the subsequent decades prior to the 1980s; the court instead found only generally permissive use and use for "seasonal recreation purposes, namely hunters," from the mid-1980s forward. The District Court concluded that "[t]he appearance of a road on a map is similarly unreliable evidence of public use or the validity of a claim for a public road." It noted that "[p]rescription can never be obtained by stealth [or] by secret conduct concealed from the impacted landowner," and it found that there was simply no evidence of recreationists ever making "a distinct and positive assertion of a right hostile to the private landowners or their agents until [the] 2007" confrontation with Mark Robbins. It additionally found insufficient evidence of use for the twelve years since 2007 to constitute adversity.[13]

¶40 PLWA argues that the District Court's "wholesale rejection of [the] hunters' testimony" as to the element of adversity is suspect and that the court erroneously relied

---

[13] The District Court alternatively concluded that, even if there had been sufficient evidence of prescriptive use since the September 2007 confrontation, that (1) it pertained only to the portion of the Disputed Road owned by the Robbins Family over Section 35, and (2) the required five-year prescriptive period would have ended in September 2012, one month after PLWA filed its suit, and thus would not be ripe for adjudication.

on speculation that hunters had "privately harbor[ed] their intentions" to use the Disputed Road in a hostile and adverse manner to the landowners, without any support by the record or the law. It further argues that the evidence establishes the landowners knew of the public's use and acquiesced to it, and thus the District Court erroneously determined that 2007 was the first instance of hostility. PLWA maintains there was sufficient evidence to support all elements, including evidence of use for every decade since 1903, and that the District Court erred by rejecting evidence of seasonal use because that seasonal use was accompanied by evidence of other uses, such as other land management uses.

¶41     For a public use to be adverse, a plaintiff must show more than generally permissive, seasonal, and recreational use. *Pedersen v. Ziehl*, 2013 MT 306, ¶ 15, 372 Mont. 223, 311 P.3d 765 (citation omitted) ("if the use begins as a permissive use, it cannot ripen into a prescriptive right, no matter how long it may continue, unless there is a distinct and positive assertion of a right hostile to the owner"); *Pub. Lands Access Ass'n*, ¶ 35 (citation omitted) ("seasonal use by hunters, fisherman, hikers, campers, use by neighbors visiting neighbors, and persons cutting Christmas trees and gathering firewood are not sufficient to establish prescriptive use"); *Oates v. Knutson*, 182 Mont. 195, 200, 595 P.2d 1181, 1184 (1979) (citation omitted) ("recreational use is insufficient to raise the presumption of adverse use"). Such recreational uses, however, "may be one factor in 'the nature of the enjoyment' by which the public road right-of-way was acquired by prescriptive use," and thus may be relevant when combined with other uses. *Pub. Lands Access Ass'n*, ¶ 36; *see also McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 38, 301 Mont. 81, 10 P.3d 794.

27

When the use is recreational, "implied acquiescence does not amount to permission, to defeat a showing of adverse use." *Pub. Lands Access Ass'n*, ¶ 36 (citation omitted).

¶42 The District Court's determination that there was not "clear and convincing evidence" showing continuous hostile use for the requisite statutory period is supported by substantial credible evidence in the record. Based on the evidence presented, the District Court found that the first credible continuous non-landowner use began in the mid-1980s with only seasonal hunters, who mostly requested permission to use the Disputed Road. It also found not credible Offerdahl's and Hjort's testimony that Bob Fink had stated permission was not required. It is not our role to reweigh the credibility of witnesses. *Barrus*, ¶ 13 (citation omitted). Any evidence of non-permissive use was so infrequent that it did not outweigh the bulk of the evidence showing permissive use. We find no error in the District Court's determination that there was not "clear and convincing" evidence to show adversity, and thus that PLWA did not establish a public prescriptive easement over the Disputed Road.[14]

¶43 PLWA cites *Lunceford v. Trenk*, 163 Mont. 504, 518 P.2d 266 (1974), to support its contention that the public's use of the Disputed Road was not permissive. But that case is readily distinguishable from the facts at hand; there, the "vast majority of users" did not

---

[14] Citing *Leisz*, ¶¶ 34-35, PLWA additionally argues that the District Court erred when it failed to "consider each element [for public prescription] separately or make the requisite determination that each element was not established by clear and convincing evidence." But failure to establish any one element for prescription is dispositive of the claim. Because we agree that PLWA did not establish the elements of continuous and uninterrupted use or adversity, we need not address this argument. *See Heller*, ¶ 15 ("*Each element* of a prescriptive easement claim must be proven by clear and convincing evidence.") (emphasis added).

ask and were not given permission to use the road. *Lunceford*, 163 Mont. at 509, 518 P.2d at 268. The public instead "assumed [it] had a right to use the road and used it. [The landowners] were aware of the use and until 1972 made no effort to restrain the use as to plaintiffs." *Lunceford*, 163 Mont. at 509, 518 P.2d at 268. Unlike *Lunceford*, here there was substantial credible evidence presented showing various landowners giving permission to the public, as well as substantial credible evidence showing that the vast majority of public users requested permission.[15] Landowners also submitted evidence of signs and gates across the Disputed Road. Though not conclusive (*see Brown & Brown of MT, Inc. v. Raty*, 2012 MT 264, ¶ 28, 367 Mont. 67, 289 P.3d 156), gates provide "strong evidence" in support of the public's use of a road being merely permissive. *Kessinger v. Matulevich*, 278 Mont. 450, 457, 925 P.2d 864, 869 (1996). The District Court did not err when it concluded that the evidence showed the public did not assume it had a right to use the Disputed Road.

¶44     PLWA additionally argues that the District Court's findings and conclusions were insufficient because it did not specifically indicate whether its determinations were based on "clear and convincing evidence" and noted only that there was "conflicting and disputed evidence" of permissive use. Citing *Curran v. Mount*, 657 P.2d 389, 392 (Alaska 1982), PLWA contends this lack of specificity for the standard of proof used is sufficient to constitute reversible error. Reviewing the court's findings and conclusions, we are

---

[15] *Lunceford* also referred to the concept of unexplained use as giving rise to a presumption of claim of right and adverse use, a principle we later disapproved in *Warnack v. Coneen Family Tr.*, 266 Mont. 203, 214, 879 P.2d 715, 722 (1994).

unpersuaded that the District Court applied the incorrect standard of proof when it concluded that the elements for prescriptive public easement had not been met.

¶45    We conclude there was substantial credible evidence supporting the District Court's determination that there is no public prescriptive easement on the Disputed Road, and we accordingly affirm its ruling on that issue.

## CONCLUSION

¶46    The District Court did not err in its conclusion that the Disputed Road is not a public road either by statutory methods or by prescriptive easement. It properly applied the *Reid* "record as a whole" standard, and there was substantial credible evidence supporting its findings. We affirm.


                                             /S/ BETH BAKER

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE